**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF INDIANA**
**FORT WAYNE DIVISION**

| | | |
|---|---|---|
| BETHANY KUNTZMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:07 CV 209 |
| | ) | |
| WAL-MART, | ) | |
| | ) | |
| Defendant. | ) | |

## OPINION and ORDER

Defendant Wal-Mart Stores East, L.P.[1] ("Wal-Mart East") has moved for

summary judgment (Def.'s Mot. for Summ. J., DE # 53) and to strike portions of plaintiff

Bethany Kuntzman's ("Kuntzman"), sur-reply (Def.'s Rule 56 Mot. to Strike, DE # 66).

As the motion to strike must be dealt with as a preliminary matter, the court will

address it first.

## Motion to Strike

After Wal-Mart East's motion was fully briefed, Kuntzman moved for leave to

file a sur-reply claiming that Wal-Mart's reply brief in support of its motion for

summary judgment "assert[ed] inapplicable jurisprudence and inaccurate factual

claims." (Pl.'s Mot. for Leave to File Sur-reply in Opp. to Summ. J., DE # 62.) This court

granted Kuntzman's motion for leave to file a sur-reply noting that much of defendant's

reply brief contested the admissibility of evidence. (Order Granting Pl.'s Mot. for Leave

---

[1] Defendant Wal-Mart Stores East, L.P. is improperly named in the case as
"Wal-Mart."

to File Sur-reply, DE # 64.) Because Wal-Mart East did not file a separate motion addressed to admissibility of evidence as required by NORTHERN DISTRICT OF INDIANA LOCAL RULE 7.1, this court ruled that Kuntzman should have an opportunity to address admissibility of evidence. (*Id.*) Kuntzman filed her sur-reply. (Pl.'s Sur-reply, DE # 65.) Defendant has moved to strike sections D, E, F, G, H, and I of Kuntzman's sur-reply, arguing that they exceed the scope of the order allowing the sur-reply to be filed. (Def.'s Mot. to Strike, DE # 66.) Kuntzman denies this contention. (Pl.'s Resp. in Opp. to Def.'s Mot. to Strike, DE # 67.) The court now addresses the motion to strike.

While FED. R. CIV. P. 12(f) allows a court to strike "from any pleading any insufficient defense or any redundant, immaterial, impertinent or scandalous matter," motions to strike are generally disfavored and usually only granted in situations in which the contested material causes some prejudice to the moving party. *Rivertree Landing LLC v. Murphy*, 246 F.R.D. 667, 667 (N.D. Ill 2007). While some courts have held that RULE 12(f) applies only to pleadings and does not allow the court to strike parts of motions or briefs on summary judgment, in practice motions to strike are often used to attack the use of inadmissable evidence at the summary judgment stage. *Compare E.E.O.C. v. Admiral Maint. Serv., L.P.*, 174 F.R.D. 643, 645-46 (N.D. Ill. 1997) (finding that summary judgment motions and the documents that support them are not pleadings and therefore are not subject to motions to strike pursuant to FED. R. CIV. P. 12(f)) *with Officer v. Chase Ins. Life & Annuity Co.*, 478 F. Supp. 2d 1069, 1073 (N.D. Ind. 2007)

(granting a motion to strike an exhibit to a summary judgment motion because it did not comply with RULE 56(e)).

NORTHERN DISTRICT OF INDIANA LOCAL RULE 7.1 only provides for filing of an initial brief, a response to that brief, and a reply brief. Therefore, courts have struck down both sur-replies filed without leave of the court and, when leave has been granted, parts of sur-replies that extend beyond the scope of the leave. *Cleveland v. Porca Co.*, 38 F.3d 289, 297 (7th Cir. 1994) (also suggesting that parties can move to strike parts of summary judgment reply briefs that raise new issues); *Quade v. Kaplan*, No. 06 C 1505, 2008 U.S. Dist. LEXIS 32467, at *19-20 (N.D. Ill. Mar. 31, 2008) (striking the portions of Kuntzman's sur-reply that went beyond what the court had given him leave to address).

In this case, while Wal-Mart East has labeled its motion to strike a "Rule 56 Motion," the document is not directed towards the admissibility of any evidence. (Def.'s Mot. to Strike 1.) Wal-Mart East moves to strike only arguments in Kuntzman's sur-reply. Wal-Mart East's sole argument for striking sections of Kuntzman's sur-reply is that they exceed the scope of the order granting leave for the sur-reply. (*Id.*) Wal-Mart East does not claim that the sur-reply causes it any prejudice, most likely because it does not appear to, that the sur-reply sections are redundant or immaterial, or that it needs an opportunity to respond to the sur-reply.

Sections D, E, F, and G of Kuntzman's sur-reply, as well as sections A-C which are not contested, all address the admissibility of evidence, thereby staying within the

scope of this court's order. While section H does go beyond a discussion of the admissibility of evidence, Kuntzman argues there that she does not allege that her constructive discharge was based on the hostile work environment. (Pl.'s Sur-reply 6.) The court's consideration of this statement does not cause any prejudice to Wal-Mart East. The arguments in section I that extend beyond admissibility are not relied upon by the court.

For the foregoing reasons, Wal-Mart East's motion to strike (Def.'s Mot. to Strike, DE # 66) is **DENIED**.

## Summary Judgment

Defendant Wal-Mart East, has moved for summary judgment against plaintiff Kuntzman. (Def.'s Mot. for Summ. J., DE # 53; Br. in Supp. of Def.'s Mot. for Summ. J., DE # 54.) Kuntzman has responded (Pl.'s Resp. in Opp'n of Summ. J., DE # 59), Wal-Mart East has replied (Def.'s Reply, DE # 61), and Kuntzman has filed a sur-reply (Pl.'s Sur-Reply, DE # 65). For the reasons explained below, the motion will be **GRANTED** in part and **DENIED** in part.

## I.    BACKGROUND

The facts discussed herein are either undisputed, or, when in dispute, resolved in favor of Kuntzman. Although this summary is largely based on the facts not in dispute, it should nevertheless not be taken as a statement of undisputed facts. The court has included some facts as Wal-Mart East sees them in order to explain the parties' dispute.

But in ruling on the motion, the court has relied upon facts either not in dispute or, if disputed, resolved in favor Kuntzman.

A. *Parties*

Wal-Mart East is a subsidiary of the corporation Wal-Mart. Kuntzman was an employee of Wal-Mart East from 2001 until 2006, working for the company while in college. (Bethany Kuntzman Dep., App. to Br. in Supp. of Def.'s Mot. for Summ. J., DE # 55-4 at 20.)[2] After completing her studies, Kuntzman quit working for Wal-Mart East and took a position as an accountant at Ernst & Young. (Kuntzman Dep., App. to Def.'s Br. 21, 102-03.)

B. *Sexual Harassment Allegations*

Kuntzman alleges that while she was working at the Vision Center of the Wal-Mart East location in Decatur, Indiana, she was sexually harassed by a coworker, complained of the harassment to no avail, and that, in retaliation, she was subjected to more harassment, her complaints were purposefully ignored, and she was wrongly accused of criminal activity.

Kuntzman's allegations center primarily around a male coworker named Bentley Boots ("Boots"), then an assistant manager at the Decatur location. According to Kuntzman, Boots sexually harassed her for an extended period of time, with the

---

[2] Kuntzman and Wal-Mart East have each included pages of Kuntzman's deposition in the appendices to their Response in Opposition of Summary Judgment and Brief in Support of Summary Judgment respectively. In both cases, the court cites to the pages numbers assigned to the deposition.

harassment continuing even after he was transferred to a different store. When the harassment began, shortly after the Decatur store opened in October 2005, it consisted primarily of "continual sexual comments" coming from Boots, such as comments about her body and requests to have sex. (Kuntzman Dep., Pl.'s App. to Resp., DE # 60-2 at 49-51.)

In December 2005, Boots, after apparently getting Kuntzman's cellular phone number from Wal-Mart's oil change service, began sending harassing text messages to her. (*Id.* at 53-55.) These messages were in addition to the sexually-tinged comments he would make to Kuntzman when he came by the store's Vison Center. (*Id.* at 55-56.) Boots would make sexual comments to Kuntzman, in person, about three or four times every workday. (*Id.* at 57-58.) Boots also harassed Kuntzman outside the workplace, once driving to her apartment complex, parking in her spot, and texting her that he wanted to have sex. (*Id.* at 62-63.)

The most egregious alleged harassment occurred in January 2006, when Kuntzman went into an unused office at the Vison Center, and Boots followed her inside, shut and blocked the door, demanded oral sex, and told Kuntzman that he wanted her to touch his penis. (*Id.* at 70-72.) According to Kuntzman, during this encounter, Boots blocked the door to the office for several minutes, until he finally relented and let Kuntzman leave. (*Id.*) In her complaint to the Equal Employment Opportunity Commission ("EEOC"), Kuntzman claimed that during this encounter, Boots also unzipped his pants, showed his penis to Kuntzman, tried to kiss her on the

mouth, and grabbed her hand and forced her to touch his genitals. (Am. Charge of Discr. to EEOC, Pl.'s App. to Resp., DE # 60-3 at 2.)

Boots transferred to a different store at some point toward the end of January or beginning of February 2006, but, according to Kuntzman, continued to send sexually harassing text messages to her cellular phone. (Kuntzman Dep., App. to Def.'s Br. 117-19.) Through April 2006, Boots would still occasionally come by the Decatur store when she was working and try to talk to her and get her to "meet up with him." (*Id.* at 116; Kuntzman Dep., Pl.'s App. to Resp. 114-16, 140.) Kuntzman stated that she could not remember Boots having come to the store in May, that his last text message to her was in May 2006, and that he called the store once in May and talked to another employee. (Kuntzman Dep., Pl.'s App. to Resp. 140-41.) She has not provided evidence of any harassing conduct from Boots after May 2006.

C.    *Kuntzman's Complaints to Supervisors*

Kuntzman alleges that she repeatedly complained to several different supervisors about the harassment. Specifically, Kuntzman first complained to her direct supervisor, the Vison Center's manager, a woman named Dawn Zartman Lawson ("Zartman"). (Kuntzman Dep., Pl.'s App. to Resp. 50-53.) Kuntzman first complained to Zartman toward the end of October 2005, describing the ongoing sexual comments Boots made to her. (*Id.*) Kuntzman reported having no knowledge that Zartman ever took Kuntzman's complaints to Zartman's higher-ups. (*Id.*)

Also in October 2005, Kuntzman complained about Boots to Chris Davis, an assistant manager at Wal-Mart East's Decatur location. (*Id.*) Davis indicated he would pass along the information to the store's co-manager, Jeremy Rodifer, though Kuntzman doesn't know if he ever did so. (Kuntzman Dep., Pl.'s App. to Resp. at 52-53, 56, 108-10.) Kuntzman claims that she repeatedly complained about Boots to Zartman, and to Davis "[p]retty much every day after [face-to-face harassment from Boots in December 2005] happened." (*Id.* at 56-57.) She also complained to Davis and Rodifer individually in December 2005 about the text messages she had begun receiving from Boots, showing them some of Boots's messages. (*Id.* at 52-57, 110-11.) At one point, Davis told Kuntzman that he had talked to Boots about the harassment and communicated to her that "the harassment would stop." (*Id.* at 57.) He also informed Kuntzman that Rodifer was going to talk to the store's head manager, Greg Farmer, about Boots's harassment; Kuntzman never spoke to Farmer directly about Boots's behavior towards her. (*Id.* 109-10) Kuntzman also told Davis and Zartman about the harassment inside the unused office when Boots blocked the door and refused to let her leave. (*Id.* at 116-17.)

In addition, at various points in December 2005 and January 2006, Kuntzman directly informed Rodifer about Boots's harassment. (*Id.* at 110-14.) Rodifer allegedly told her that he "would look into it," and talk to Boots and Farmer, the store manager. (*Id.* at 111.) Kuntzman claims that after she told Rodifer in January 2006 that Boots was still harassing her, he laughed and said words to the effect of "we should start dating

after you leave the store." (Kuntzman Dep., Pl.'s App. to Resp. 112-13.) Rodifer also allegedly once told Kuntzman, after Boots had been transferred, that "I need to get laid." (*Id.* at 120-22.)

In an affidavit that Wal-Mart East submitted in support of its motion for summary judgment, Zartman states that Kuntzman "never told me that she was being harassed" by Boots, and that she believed Kuntzman and Boots were friends. (Dawn Zartman Lawson Aff., App. to Def.'s Br., DE # 55-3 at 2.) Similarly, Farmer, in an affidavit, attests that Kuntzman "never told me that she was being harassed by Mr. Boots" and that he "had no knowledge of Mr. Boots's alleged misconduct" until Wal-Mart received notice of her filing a complaint with the EEOC. (Greg Farmer Aff., App. to Def.'s Br., DE # 55-2 at 2.)

D.     *Effects of Harassment on Kuntzman's Work*

Kuntzman states that, despite the harassment from Boots, she was able to perform her work duties; however, it did make her job "very difficult." (Kuntzman Dep., Pl.'s App. to Resp. 180.) Specifically, Kuntzman was not able to work as efficiently as she would have, had she not been under the stress caused by the harassment. (*Id.*) For example, because Boots would call her to harass her, she was reluctant to answer the phone at the Vision Center and would "try to get someone else to answer the phone." (*Id.*) In addition, after Boots started harassing her, Kuntzman allegedly began suffering severe migraine headaches. (*Id.* at 187-89.)

*Kuntzman's Inquiries about Promotion and Transfer*

At various points in fall 2005, during which time she was harassed by Boots, Kuntzman made inquiries with Davis, Rodifer, and Zartman about the possibility of "becoming a salaried manager." (Kuntzman Dep., Pl.'s App. to Resp. 103-07.) At the time, Kuntzman was apparently weighing her career options, as she had signed up for the Law School Admissions Test (LSAT) and had an offer from accounting firm Ernst & Young to work there as an accountant once she graduated from college. (Kuntzman Dep., App. to Def.'s Br. 125.)

Allegedly, Rodifer told Kuntzman that "there were no openings" at the store at the time for managers, and that she would have to get Farmer, the store manager, to sign off on a transfer to another location where a management position might be available. (Kuntzman Dep., Pl.'s App. to Resp. 102-05.) From this conversation, Kuntzman got the impression that management was hostile towards her because of her complaints against Boots, that she couldn't be promoted at the Decatur store, and that Farmer would not support her becoming a manager at Wal-Mart. (*Id.* at 104-07.) She states that she never talked directly with Farmer about becoming a manager. (*Id.* at 108.)

At some point after this conversation with Rodifer in fall 2005, Kuntzman opted to accept the job offer from Ernst & Young, which was conditional on her graduation from college, and didn't begin until late summer 2006. (Kuntzman Dep., Pl.'s App. to Resp. 102-03, 122-25, 184-85.) Kuntzman gave notice in April or May 2006 to Wal-Mart that she would be quitting to take the job with Ernst & Young in late summer.

(*Id.* at 125-26.) She resigned on August 14, 2006. (Pl.'s Resp. 13.)

F.    *Wal-Mart East's Workplace Harassment Policies*

Wal-Mart East had a Discrimination and Harassment Prevention Policy ("the policy"). (Wal-Mart Discr. & Harassment Prev. Policy, App. to Def.'s Br., DE # 60-5.) The policy prohibited, among other actions, the exact type of harassment that Boots allegedly engaged in, namely "making offensive comments about an individual's status, appearance or sexual activity," "[r]epeated unwanted sexual flirtations, advances, or propositions," and "[p]ressure for sexual activity." (*Id.* at 1.) Non-salaried employees, such as Kuntzman, were required to immediately report harassment that they "experience, observe or become aware of" in "one of two ways:" either by reporting the "violation to any Salaried Member of Management" or calling the toll-free "Wal-Mart Ethics Helpline." (*Id.* at 2.) The policy also stated that Wal-Mart East "will take appropriate steps to ensure that there is no retaliation of any kind" for reporting harassment. (*Id.*)

G.    *Kuntzman's Cellular Phone Records*

During discovery, Wal-Mart East conducted a forensic examination of Kuntzman's former cellular phones (James Sheridan Aff., App. to Def.'s Br., DE # 55-13 at 1) and discovered a series of text messages sent by Boots to her phone (Expert Report of James Sheridan, App. to Def.'s Br., DE # 55-12). These messages were often responded to, by someone using Kuntzman's phone, in a manner indicating that Boots and the person sending the messages from her phone were having a consensual,

sexual relationship. (Expert Report of James Sheridan, App. to Def.'s Br.; *see* Def.'s Br. 11-12.) In addition, Kuntzman's cellular phone records showed that, while her phone received numerous calls from Boots, many of these calls lasted beyond a minute or two, and that someone using Kuntzman's phone called Boots at least ten times from fall 2005 to spring 2006. (*See* Def.'s Br. 10.)

Kuntzman claims that she had unlimited text messaging, does not recall sending any sexually suggestive texts to Boots, and believes that she did not send the texts noted by Wal-Mart East. (Bethany Kuntzman Aff., App. to Pl.'s Resp., DE # 60-6 at 1-2.) She also attests that she "often saw" Zartman, her immediate supervisor, use Kuntzman's phone to send text messages; Kuntzman had given Zartman "general permission to use her phone" when Zartman didn't have hers, indicating that Zartman could have used her phone to place calls and/or send texts. (*Id.* at 1-2.)

H.     *Criminal Complaint and EEOC Charges*

Within a few months after Kuntzman resigned and began working as an accountant, Wal-Mart East alleged to authorities that she stole "in excess of $7,000 from the Decatur store" through abusing money orders in some way. (Wal-Mart East Statement of Position to EEOC, App. to Pl.'s Resp., DE # 60-8 at 3.) The state charged Kuntzman, but later dismissed the charges. (State of Ind. Mot. to Dismiss, App. to Pl.'s Resp., DE # 60-7.)

Kuntzman filed an EEOC charge of discrimination on December 13, 2006, shortly after Wal-Mart East initiated the criminal complaint against her. (Charge of Discr. to

12

EEOC, App. to Def.'s Br., DE # 55-15; Wal-Mart East Statement of Position to EEOC 3.) The EEOC then issued a "Notice of Suit Rights" letter to Kuntzman after evaluating her charge. (Pl.'s Compl. 2.)

I.      *The Parties' Arguments*

In her complaint, Kuntzman has raised three separate claims all arising under Title VII of the Civil Rights Act of 1964: gender discrimination based on disparate treatment,[3] sexual harassment such that Wal-Mart East created a hostile work environment, and retaliation. (*Id.* at 5-7.) It is unclear whether Kuntzman is bringing a claim of constructive discharge in the present lawsuit. Her complaint, and the specific counts within it, do not raise a stand-alone constructive discharge claim and she never sought leave to file, nor did she file, an amended complaint raising the claim. (*See id.* at 5-7.) However, she alleges that Wal-Mart East subjected her to retaliatory acts intended to bring about her resignation. (*Id.* at 3.) After Wal-Mart East challenged the merits of a constructive discharge claim in its motion for summary judgment,[4]

_____

[3] The complaint is somewhat vague about this claim, stating that "[s]imilarly situated male employees have been afforded more favorable terms and conditions of employment as compared to [p]laintiff." (Pl.'s Compl. 5.) However, it becomes clear through her briefing that the plaintiff was referring to Wal-Mart's failure to promote her and the working conditions caused by the sexual harassment and management's reaction to it.

[4] Kuntzman does assert that she was constructively discharged as part of her retaliation claim (Pl.'s Compl. 7; Pl.'s Resp. 13), so it is possible that Wal-Mart East addresses this claim in response to that argument.

Kuntzman stated in her response that her "constructive discharge claim . . . must survive summary judgment." (Pl.'s Resp. 12.)

Wal-Mart East has now moved for summary judgment on these four claims, including constructive discharge, making several different arguments. First, Wal-Mart East alleges that Kuntzman's retaliation claim is time-barred, as she filed her EEOC charge more than 300 days after Rodifer made comments to her about dating. Wal-Mart East also contends that undisputed facts, viewed in light most favorable to Kuntzman, establish that it never retaliated against her. Second, Wal-Mart East asserts that Kuntzman's sexual harassment claim fails because the text messages show that her relationship with Boots was consensual. It also argues that the comments from Boots were not severe enough to be actionable, that the harassment did not affect the conditions of her employment, and that she failed to properly report the harassment. As to the gender discrimination claim, Wal-Mart East argues that Kuntzman has failed to identify evidence that would allow a jury to find for her on all of that claim's required elements. Finally, Wal-Mart East contends that Kuntzman has not pointed out sufficient evidence to create an issue of fact as to whether her work conditions were so intolerable that she was constructively discharged.

In response, Kuntzman agrees to drop her gender discrimination claim (Pl.'s Resp. 2), but defends her retaliation and sexual harassment claims and, to some degree, her constructive discharge claim. Regarding retaliation, Kuntzman asserts that her claim is not time-barred, citing Wal-Mart East's filing of criminal charges against

her as part of a continuing pattern of retaliation. She also contends that Boots's harassment was unwanted, and was so severe and pervasive that it made her work environment hostile.

In reply, Wal-Mart East argues that many of the allegations relied on in Kuntzman's response are either inadmissable or contradicted by her previous statements. Namely, Wal-Mart East insists that Kuntzman testified at her deposition that the only two instances of retaliation were the comments by Rodifer, and thus cannot rely on the criminal charges as evidence of retaliation. In addition, Kuntzman refused to answer questions about criminal charges during her deposition, citing her Fifth Amendment right against self-incrimination, and failed to allege in her complaint that the criminal charges were part of her retaliation claim. Accordingly, Wal-Mart East argues that Kuntzman cannot allege that the criminal charges were a form of retaliation at this point in the proceedings. Similarly, Wal-Mart East contends that Kuntzman failed to mention during her deposition particular details of the January 3, 2006, encounter between Kuntzman and Boots in the unused office.

## II.     STANDARD OF REVIEW

### A.     *Summary Judgment Standard*

Summary judgment "should be rendered if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The party seeking summary judgment "bears the initial

responsibility of informing the district court of the basis for its motion, and identifying" those materials listed in RULE 56(c) which "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has met its burden, the nonmovant may not rest upon mere allegations. Instead, "[t]o successfully oppose a motion for summary judgment, the nonmoving party must come forward with specific facts demonstrating that there is a genuine issue for trial." *Trask-Morton v. Motel 6 Operating L.P.*, 534 F.3d 672, 677 (7th Cir. 2008). "It is not the duty of the court to scour the record in search of evidence to defeat a motion for summary judgment; rather, the nonmoving party bears the responsibility of identifying the evidence upon which he relies." *Harney v. Speedway SuperAmerica, LLC*, 526 F.3d 1099, 1104 (7th Cir. 2008). Furthermore, when considering a motion for summary judgment, the court views the record and makes all reasonable inferences in a light most favorable to the nonmovant. *Popovits v. Circuit City Stores, Inc.*, 185 F.3d 726, 731 (7th Cir. 1999). If the non-moving party cannot establish an essential element of its claim, RULE 56(c) requires entry of summary judgment for that claim. *Massey v. Johnson*, 457 F.3d 711, 716 (7th Cir. 2006) (citing *Celotex*, 477 U.S. at 322-23).

## III.   ANALYSIS

As noted above, Kuntzman has abandoned her gender discrimination claim, but defends her claims of constructive discharge (to the extent there is one), sexual harassment, and retaliation. The court will address these remaining claims in that order.

*A.      Constructive Discharge*

Any claim of constructive discharge raised by Kuntzman under the current set of facts does not survive summary judgment. In ordinary situations where the employer's engagement in or condonation of sexual harassment interferes with an employee's working conditions, the employee is expected to remain on the job while seeking redress. *Hertzberg v. SRAM Corp.*, 261 F.3d 651, 659 (7th Cir. 2001). Constructive discharge exists in the aggravated case of sexual harassment where "working conditions [are] so intolerable that a reasonable person would [feel] compelled to resign." *Pa. State Police v. Suders*, 542 U.S. 129, 147 (2004). Although this is an objective standard, the Seventh Circuit has considered a plaintiff's individual responses in determining whether the environment was actually intolerable. *See Lindale v. Tokheim Corp.*, 145 F.3d 953, 955 (7th Cir. 1998) (discussing that in some situations, a court may require that a plaintiff tried to do something to remedy the situation before walking off the job because "passivity in the face of working conditions alleged to be intolerable is often inconsistent with the allegation").

The reasons why Kuntzman's evidence is not sufficient to create a triable issue on her claim of constructive discharge are manifold. First, Kuntzman appears to claim that her constructive discharge was not based on the hostile work environment, in which case she has articulated a claim based on conduct not yet recognized as constructive discharge. (Pl.'s Sur-reply 6.) Kuntzman asserts that she does not need to prove that she was subjected to an aggravated case of sexual harassment because she is

not claiming that "her discharge was based *on the hostile work environment*." (*Id.*) (emphasis in original.) Rather, Kuntzman contends, she was compelled to resign because of "management's studied indifference and hostility to her *after* she reported Boots' harassment." (*Id.*) (emphasis in original.) Even if it was management's "studied indifference and hostility" that caused her resignation, Kuntzman still has to show that the constructive discharge was caused by a hostile work environment aggravated beyond an ordinary gender discrimination situation since all constructive discharge claims require proof of an environment so intolerable in a discriminatory way that resignation in the only option. *Rabinovitz v. Pena*, 89 F.3d 482, 489 (7th Cir. 1996).

Kuntzman argues that part of management's studied indifference and hostility that led to her constructive discharge was Rodifer's inappropriate comments to Kuntzman when she reported Boots's harassment to him. (Pl.'s Resp. 13.) When Kuntzman complained about Boots's actions, Rodifer asked her out. The content of Rodifer's comments, essentially invitations to date, alone do not rise to the level of even an ordinary claim of sexual harassment. *See Murray v. Chicago Transit Auth.,* 252 F.3d 880, 889 (7th Cir. 2001) (two invitations to date do not amount to sexual harassment). In context, that they were made when Kuntzman was reporting Boots's conduct, Rodifer's comments become more hostile; but they still do not rise to the level of conditions so intolerable that a reasonable employee would feel compelled to resign.

Further, to the extent that Kuntzman is claiming that part of Wal-Mart East's studied indifference towards her was its refusal to transfer her to a management

position (Pl.'s Resp. 3; Pl.'s Sur-reply 6), this would not support a claim of constructive discharge. The Seventh Circuit has found "a reasonable employee would not have considered a failure to be promoted an event that made her working conditions intolerable." *Lindale*, 145 F.3d at 956.

Second, Kuntzman did not quit her job until August 2006, six months after Boots had been transferred and nearly seven months after the most severe episode of harassment. And Kuntzman has not identified any evidence that Boots was harassing her, or even contacted her or came into the Vision Center, after May 2006. Kuntzman does not claim that her constructive discharge occurred when she gave her notice of her resignation to Wal-Mart East in April or May 2006, when the evidence shows that the harassment was still occurring. She claims that her constructive discharge occurred on August 14, 2006. (Pl.'s Resp. 13.) That the evidence shows that the harassment died down, or even stopped, contradicts any claim that Kuntzman's resignation in August 2006 was "constructive discharge" due to intolerable working conditions. *McPherson v. City of Waukegan*, 379 F.3d 430, 440 (7th Cir. 2004) (finding that the plaintiff had not been constructively discharged when she quit months after the alleged harasser had resigned in response to the defendant's internal investigation against him); *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 667 (7th Cir. 2001) (no constructive discharge when the complained-of acts occurred four months before the employee quit).

Even if Kuntzman was claiming that her constructive discharge occurred when she gave her notice in April or May 2006, this claim is undermined by the fact that she

then stayed at the job for four or five more months. *Cf. Hipp v. Liberty Nat'l Life Ins. Co.*, 252 F.3d 1208, 1244 (11th Cir. 2001) (stating, "[i]t seems unlikely that an employee who is constructively discharged under intolerable working conditions would plan his departure for three months" and thus finding that the employee was not constructively discharged). As stated above, constructive discharge occurs when conditions are so intolerable that instead of staying on the job while seeking redress, as required of employees facing ordinary harassment, conditions are so intolerable that the employee is compelled to leave immediately. *Hertzberg,* 261 F.3d at 658. Therefore, Kuntzman could not argue that conditions were so intolerable in April or May 2006 that she was compelled to resign rather than stay on the job and seek redress when she did not leave the purportedly intolerable conditions for several more months.

Finally, the Seventh Circuit has required a constructive discharge claimant to show that "quitting was the only way" to "extricate [him/]herself from the intolerable conditions." *Gawley v. Ind. Univ.,* 276 F.3d 301, 315 (7th Cir. 2001) (citing *Sweeney v. West*, 149 F.3d 550, 557 (7th Cir.1998)). As explained below, this court finds that Kuntzman's utilization of one of the corrective action options in Wal-Mart East's policy is sufficient to support a finding of employer liability. However, a reasonable employee faced with intolerable work conditions would avail him/herself of the other option under the policy, calling the toll-free Wal-Mart Ethics Helpline, before resorting to resignation. *Cf. Gawley*, 276 F.3d at 315 (finding that the plaintiff was not constructively discharged

when she relied only on ineffective informal means of correction for seven months before initiating a formal complaint).

Because of the above-stated reasons, Kuntzman's has not met her burden of establishing that there is a genuine question of fact as to her constructive discharge and Wal-Mart East's motion for summary judgment is granted as to this claim.

  B.  *Sexual Harassment / Hostile Work Environment*

Kuntzman asserts a claim of sexual harassment based on hostile work environment. (Pl.'s Compl. 6.) Title VII is violated "when the workplace is permeated with discriminatory intimidation, ridicule, and insult . . . sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993). To prevail on a hostile work environment claim, Kuntzman must persuade a reasonable jury, by a preponderance of the evidence, that she was subjected to: 1) unwelcome sexual conduct, advances or requests, 2) based on her gender, 3) that were sufficiently severe and pervasive to alter the conditions of employment and create an abusive or hostile environment, and 4) there is a basis for employer liability. *Erickson v. Wis. Dep't of Corr.*, 469 F.3d 600, 604 (7th Cir. 2006); *Beamon v. Marshall & Ilsley Trust Co.*, 411 F.3d 854, 863 (7th Cir. 2005). To prevail on summary judgment, a defendant must show that no reasonable jury could find that the plaintiff has shown facts to establish one of the essential elements of this claim. *Bilal v. Rotec Indus.*, 326 Fed. Appx. 949, 956 (7th Cir. 2009) (affirming summary judgment in favor of defendants when all elements

except for "severe and pervasive" were met). Wal-Mart East contends that Kuntzman

cannot prove the first, third, and fourth elements.[5] (Def.'s Br. 16.)

First, Wal-Mart East argues that Boots's conduct was not unwelcome sexual

harassment because Kuntzman welcomed and reciprocated Boots's sexual advances. An

employee does not waive his/her right to protection from sexual harassment by

engaging in a consensual sexual or social relationship, but the existence of one might be

relevant in determining whether the conduct was unwelcome, "because of" gender, or

subjectively offensive. *Ammons-Lewis v. Metro. Water Reclamation Dist. of Greater Chi.*,

488 F.3d 739, 746-47 (7th Cir. 2007). The Seventh Circuit has downplayed the

importance of the contested conduct being "unwelcome," explaining that anything that

is harassment would inherently be unwelcome. *Carr v. Allison Gas Turbine Div., Gen.*

*Motors Corp.*, 32 F.3d 1007, 1011 (7th Cir. 1994); *but see Lucero v. Nettle Creek Sch. Corp.*,

566 F.3d 720, 731 (7th Cir. 2009) (stating that the first factor for a hostile environment

claims is "unwelcome harassment"). Accordingly, Wal-Mart East's contention that

Boots's conduct was not sexual harassment because he and Kuntzman were engaged in

a consensual relationship may be considered more appropriately as part of the analysis

of whether his conduct was subjectively offensive to Kuntzman. *Mosher,* 240 F.3d at 668

(plaintiff involved in a consensual relationship with her supervisor did not state a claim

---

[5] The second element, "because of" or "based on" gender, is uncontested. However, the court notes that this element is satisfied because conduct can be found to be "because of" gender when it is motivated by misplaced sexual desire. *Smith v. Sheahan,* 189 F.3d 529, 533 (7th Cir. 1999).

of sexual harassment because she did not appear to perceive his conduct to be offensive).

An employee's complaints about a behavior indicate that it is unwelcome. *Kampmier v. Emeritus Corp.*, 472 F.3d930, 940 (7th Cir. 2007). Kuntzman contends that she complained about Boots constantly after first meeting him in September or October 2005. (Kuntzman Dep., Pl.'s App. to Resp. 50-53.) She started complaining to Zartman about Boots's sexual comments on October 25 or 26, 2005, (*id.* at 50) and to Davis in that same month. (*Id.* at 52.) She then allegedly complained to Davis every day after Boots's face to face comments to her in December 2005 (*id.* at 57) and to Zartman two to three times in November. (*Id.* at 87-88.) These frequently issued complaints, taken as true, indicate that Kuntzman did not welcome Boots's conduct. The inquiry into whether or not behavior was welcome will often turn on "credibility determinations committed to the trier of fact." *Meritor Sav. Bank, FSB v. Vinson,* 477 U.S. 57, 68 (1986). Such is the case here.

The third element, whether the conduct was severe and pervasive, has both objective and subjective components. *Lapka v. Chertoff,* 517 F.3d 974, 983 (7th Cir. 2008). To determine whether the sexual harassment was objectively severe and pervasive, courts will evaluate whether the environment was one that a reasonable person would find to be offensive. *Kampmier,* 472 F.3d at 941. To do this, courts look at: 1) the frequency of the conduct, 2) the severity of the conduct, 3) whether the conduct was humiliating, threatening, or merely offensive nature of the conduct, and 4) whether it

interfered with the employee's work performance. *Russell*, 243 F.3d at 343. While a single act of harassment can support a claim, "generally, repeated incidents create a stronger claim of hostile environment, with the strength of the claim depending on the number of incidents and the intensity of each incident." *King v. Bd. of Regents of the Univ. of Wis. Sys.*, 898 F.2d 533, 537 (7th Cir. 1990). The line between nonactionable vulgar and mildly offensive conduct and sexual harassment that creates a hostile environment is not always easy to draw. *Baskerville v. Culligan Int'l Co.*, 50 F.3d 428, 430-31 (7th Cir. 1994). On one side is "the occasional vulgar banter, tinged with sexual innuendo, of coarse or boorish workers." *Id.* at 430. On the other side are "sexual assaults; other physical contact, whether amorous or hostile, for which there is no consent express or implied; uninvited sexual solicitations; intimidating words or acts; obscene language or gestures; [and] pornographic pictures." *Id.* Based on precedent, the verbal, written, and physical conduct here, viewed in the light most favorable to the plaintiff, appears to fall towards the assault side, making a jury determination necessary. *Id.* at 431.

  In *Weiss v. Coca-Cola Bottling Co.*, a case cited by Wal-Mart East, the court found that a supervisor had not sexually harassed his employee when he inquired into her personal life, complemented her appearance, repeatedly invited her out on dates, called her a dumb blond, put an "I love you" sign on her desk, tried to kiss her three times (twice at work and once when she met him at a bar after work), and put his hand on her shoulder at least six times. 990 F.2d 333, 334-35 (7th Cir. 1993). However, in that case,

the employee never reported her supervisor's behavior to anyone and admitted to taking some of the statements as jokes, and the court considered the supervisor's acts of misconduct to be "relatively isolated." *Id. at 337.* In contrast, Kuntzman alleges that Boots made inappropriate comments to her, in person and by phone, on a frequent and sustained basis. Wal-Mart East's reliance on *Saxton v. AT&T Co.* is similarly misplaced because in that case, the employee's supervisor made two sexual advances and then stopped all sexual comments and invitations. 10 F.3d 526, 534 (7th Cir. 1993).

Kuntzman's allegations are closer to two cases in which the Seventh Circuit found that resolution at the summary judgment stage was inappropriate - *Robinson v. Sappington,* 351 F.3d 317 (7th Cir. 2003) and *Valentine v. City of Chicago,* 452 F.3d 670 (7th Cir. 2006). In *Valentine,* the plaintiff, a truck driver, saw her alleged harasser for a period of only 30 to 60 minutes a day. 452 F.3d at 682. He asked her on dates between 30 to 40 times, rubbed his crotch in front of her nearly every day, made repeated comments about her sexual body parts, and rubbed her arm or shoulder six times. *Id.* at 681. Noting that the conduct was frequent and directly targeted at the plaintiff, the Seventh Circuit held that a jury could find the environment to be objectively hostile. *Id.* at 682.

In *Sappington*, the plaintiff was a legal clerk to a judge, working with him within close confines. 351 F.3d at 331. Within a period of five months, the judge told the plaintiff that she was beautiful 50 to 100 times, called her a "blond Demi Moore" about 25 times, shook her hand twice daily for several weeks, offered to buy her a vibrator,

twice said that he wanted her to "sit on his face," once grabbed her face and threatened to kill her if she "shacked up" with anyone else, expressed jealousy when she spoke to other males or didn't eat lunch with him, and flew his plane over her mother's house once when he knew she would be there. *Id.* at 320-22. The Seventh Circuit found that a reasonable jury could find that the plaintiff was subjected to an objectively hostile work environment particularly in the context of her job in which it was difficult for her to avoid contact with her alleged harasser. *Id.* at 331.

The case at hand, while not completely analogous to either case, shares similarities with both. In this case, the offensive conduct was frequent.[6] Here, Boots allegedly made daily sexual comments and requests directly to Kuntzman for a period of three months and less frequently for a period of five months (Pl.'s Resp. 23; Kuntzman Dep., Pl.'s App. to Resp. 50, 58, 126-33, 138-41), sent Kuntzman text messages requesting intercourse and stating that he knew she was home, showed up at her apartment, commented on Kuntzman's body, asked her if she was "ready for [him] to put it in [her] ass," demanded a blow job, tried to kiss her and forced her to touch his penis. (Pl.'s Resp. 4-5.) Although Kuntzman did not work as closely with Boots as the plaintiff in *Sappington* did with her harasser, she allegedly formally complained sooner and more frequently without being able to change her work conditions, and met with sexually inappropriate comments from Rodifer when she reported the situation to him.

---

[6] Again, the facts in this analysis are conveyed in the light most favorable to Kuntzman and are not to be taken as a determination of the truth.

This could allow a jury to find that Kuntzman was similarly unable to avoid harassment. 351 F.3d at 322 (plaintiff formally complained about the judge after three months of the judge's conduct). And in *Valentine* the Seventh Circuit found that repeated, targeted behavior could be severe and pervasive even when the employee usually worked out of the office and saw her harasser for a limited amount of time.

Additionally, in dicta, the Seventh Circuit has noted that stalking crosses the line towards sexual harassment. *Minor v. Ivy Tech State Coll.,* 174 F.3d 855, 858 (7th Cir. 1999). When analyzing whether stalking had occurred, the court considered: following the employee, going past her home, calling late at night, and asking personal questions. *Id.* Kuntzman has presented some facts that if taken as true indicate some stalking-like behavior from Boots that could be seen as sexual harassment.

This case is further distinguishable from the inactionable vulgar and mildly offensive conduct in *Weiss* and *Saxton* when the January 3, 2006, encounter between Kuntzman and Boots in the optometrist's office is considered. Physical contact also lies along the continuum described in *Baskerville. Bilal,* 326 Fed. Appx. at 957. "[F]orced physical contact and touching of sexual body parts" are at the end of the spectrum from which a hostile work environment can be established even with isolated acts. *Id.* at 958. Although these incidents usually involve the alleged harasser touching the sexual body part of an employee, the reverse action, forcing the employee to touch the harasser's sexual body part, can also be found to be severe. *See Patton v. Keystone RV Co.,* 455 F.3d 812, 817 (7th Cir. 2006) (hostile work environment could be created by the sole

act of a supervisor running his hand up employee's thigh, under her shorts, and to her underwear). Incidents of physical conduct, even those less overtly sexual than that alleged by Kuntzman, can support a finding of severe and pervasive hostility.

In *Hostetler v. Quality Dining, Inc.,* the plaintiff's nonsupervisory co-worker came into her office, took her face in his hands, and stuck his tongue in her mouth. 218 F.3d 798, 802 (7th Cir. 2000). The next day, he again came into her office, grabbed her face and turned it towards himself. *Id.* When plaintiff put her head between her knees to avoid another kiss, her co-worker then almost completely unfastened her bra. *Id.* The third act of which the plaintiff complained was her co-worker's announcement in front of customers of how well he would be able to perform sexual acts on her if given the opportunity. *Id.* at 802. The court found that in part because of their "physical, intimate, and forcible character . . . these acts exceed the kind of fumbled and inappropriate attempts to kiss or embrace the plaintiff that we dealt with in *Saxton, Weiss,* and like cases." *Id.* at 809. The *Hostetler* court held that the contested conduct could be seen as "sufficiently invasive, humiliating, and threatening to poison Hostetler's working environment–indeed, overtones of sexual assault can be seen in the second incident in particular." *Id.* at 809.

In Kuntzman's version of the harassment on January 3, 2006, Boots showed up at the vision center when Kuntzman was working alone and told her to go to the optometrist's examination room. (Am. Charge of Discr. to EEOC 2.) Boots entered the room after her, closed the door, unzipped his pants, displayed his genitals, said "you're

28

going to give me a blow job," and when Kuntzman declined, asked her to touch his penis. (*Id.*) Kuntzman tried to leave the room, but Boots cornered her and tried to kiss her. (*Id.*) Kuntzman tried to run out of the room again, but Boots blocked her. (*Id.*) Boots grabbed Kuntzman's hand and forced her to touch his genitals. Kuntzman said that Zartman would be back soon and Boots let her go. (*Id.*) Kuntzman allegedly reported the incident to Zartman that same day and told her that there needed to be a rule that no woman be left alone in the vision center. (Kuntzman Dep., Pl.'s App. to Resp. 11.)

Wal-Mart East would have the court disregard Kuntzman's factual account of Boots's forcing her to touch his penis and trying to kiss her because while she described this in her EEOC charge, it was not raised by defendant's line of questioning in Kuntzman's deposition. (Def.'s Reply 6.) First, Wal-Mart East relies on *Patterson v. Chicago Ass'n for Retarded Citizens* to contend that the EEOC charge cannot be considered in a summary judgment determination because "[a]n affidavit cannot be used to create a genuine issue of material fact where the affidavit differs from the prior deposition testimony to the point that it is unreliable." 150 F.3d 719, 720 (7th Cir. 1998). Kuntzman counters that the statements are not contradictory to the point of unreliability and the matter is more properly deemed an issue of credibility for trial. (DE # Pl.'s Sur-reply 3.) The court agrees with Kuntzman on this matter.

First, the policy concerns that animated *Patterson* do not exist here. *Patterson* involved an affidavit made after the deposition testimony. 150 F.3d at 724. In her deposition, the *Patterson* plaintiff answered 255 questions with "I don't know," whereas

her affidavit testimony was clear and exact and responded directly to parts of the defendant's summary judgment motion. *Id.* The *Patterson* court was concerned that parties would inhibit their opposition's discovery efforts by giving vague answers at depositions and later giving detailed affidavit testimony that would override the first response. *Id.* That concern does not exist here where Kuntzman's charge of discrimination was made before her deposition and Wal-Mart East had that document reciting Kuntzman's version of events before this lawsuit was filed (Wal-Mart East Statement of Position to EEOC) and possibly tailored its questions at her deposition so as not to evoke all of the specific details of the incident.

Second, plaintiff's deposition testimony does not contradict her EEOC charge. The plaintiff's deposition about this part of the event is as follows:

A: He wanted me to touch his penis.

Q: And did you?

A: No.

Q: Then did you just leave the room?

A: I said Dawn would be coming back from break, even though I wasn't sure when she was coming back, but I was trying to get him to leave.

***

Q: So he asked you for oral sex, correct?

A: Correct.

Q: You say no?

A: Correct.

Q. He then tells you he wanted you to touch his penis, correct?

A: Correct.

Q: You did not.

A: Correct.

Q: What else was said during that three to five minutes?

(Kuntzman Dep., App. to Def.'s Br. 71-72.) After Kuntzman answered that question, Wal-Mart East's counsel asked her if that was the only time that she and Boots were alone in an office. (*Id.* at 73.) Kuntzman said yes, defense counsel asked her if she wanted to take a break, and after the break, defense counsel began a new line of questioning. (*Id.*)

Wal-Mart East contends "it is inconceivable that [Kuntzman] would just forget to mention, during her deposition regarding her sexual harassment allegations against the company, that Boots forced her to touch his genitals or attempted to kiss her." (Def.'s Reply 6.) This argument ignores the nature of a deposition. Kuntzman, most likely told by her attorney, prior to the deposition, to answer only the question asked and not volunteer additional information, did just that. It is likely that Kuntzman did not describe the forced touching or attempted kiss because she was not asked about them. When asked if she "touched" Boots's penis, it would be reasonable for plaintiff to take this to mean did she "voluntarily" touch it in response to his request for her to do so. It appears that once defense counsel obtained the answer it sought, it moved on.

31

While that is reasonable, it is unreasonable to expect plaintiff to then interject, uninvited, with the rest of her account already explained in the EEOC charge. Thus, the court does not find Kuntzman's EEOC charge and deposition testimony to be inconsistent and the EEOC charge account will be considered.[7]

The incident described above, particularly when considered with the rest of Boots's conduct, involved the type of behavior that the Seventh Circuit has held to "fall[ ] on the actionable side of the line dividing abusive conduct from behavior that is merely vulgar or mildly offensive." *Hostetler*, 218 F.3d at 807. Like Hostetler, Kuntzman was cornered in a small space and subjected to forced sexual contact. Thus, a reasonable jury could accept Kuntzman's account and find that Boots's conduct toward Kuntzman was invasive and threatening enough to constitute an objectively severe and pervasive hostile work environment.

Kuntzman must produce sufficient evidence to show that her working environment was subjectively offensive. *Kampmier*, 472 F.3d at 941. As stated earlier,

---

[7] The court notes that Kuntzman has not submitted a separate affidavit describing parts of the January 3, 2006, incident that are described in the EEOC charge of discrimination but not in her deposition. The court will consider the facts stated in the EEOC charge of discrimination because Wal-Mart East has not objected to the use of the statements in the EEOC complaint on the grounds that the facts therein should have been included in a sworn affidavit. *Adickes v. S. H. Kress & Co.*, 398 U.S. 144, 161 (1970) ("the party moving for summary judgment has the burden to show that he is entitled to judgment under established principles; and if he does not discharge that burden then he is not entitled to judgment. No defense to an insufficient showing is required."). Even more, at summary judgment while the court most only consider evidence admissible in content, it need not be admissible in form, *Stinnett v. Iron Works Gym/Executive Health Spa, Inc.*, 301 F.3d 610, 613 (7th Cir. 2002); and the content as laid out above would be admissible if testified to by Kuntzman.

this determination overlaps somewhat with the determination of whether the conduct was unwelcome. In *Kampmier*, the Seventh Circuit found that the plaintiff's repeated complaints about her supervisor's behavior were sufficient to raise a question of material fact as to whether the conduct was subjectively offensive even when the defendant countered that the plaintiff spent time with her supervisor's son outside of work, had her supervisor's partner babysit her daughter, visited her supervisor in the hospital, and gave her supervisor a card. *Id.* at 943. Kuntzman met Boots in September or October 2005. (Kuntzman Dep., Pl.'s App. to Resp. 51.) She allegedly started complaining to Zartman about Boots's sexual comments on October 25 or 26, 2005, (*id.* at 50) and to Davis in that same month. (*Id.* at 51.) She then allegedly complained to Davis every day after Boots's face to face comments to her in December 2005 (*id.* at 57) and to Zartman two to three times in November. (*Id.* at 87-88.) This evidence could support a finding that the environment was subjectively offensive to Kuntzman.

Seeking treatment for symptoms caused by the offensive conduct also weighs towards a showing that the plaintiff found the environment to be hostile. *See Gentry v. Exp. Packaging Co.*, 238 F.3d 842, 851 (7th Cir. 2001) (stating that "it [was] evident that Gentry perceived her environment as hostile" when because of the offensive conduct she had a hard time concentrating at work, sought treatment for depression and anxiety, and cried at work). Here, Kuntzman sought treatment for stress-related headaches allegedly caused by the hostile environment starting in October 2005 and

continued taking medication for those headaches for a year. (Kuntzman Dep., Pl.'s App.

to Resp. 27.)

On the other hand, Wal-Mart East alleges that phone calls and texts sent by

Kuntzman to Boots show that they had a "two-sided, sexual relationship."

(Def.'s Br. 17.) In response, Kuntzman argues that she never had any kind of consensual

relationship with Boots, that she didn't recall making any calls to Boots or sending him

any sexual or suggestive text messages, that her phone didn't disconnect properly

making phone calls seem longer than they were, and that Zartman had access to her

phone and permission to use it, implying that Zartman may have sent some of the calls

and/or text messages to Boots.[8] (Pl.'s Resp. 22; Kuntzman Aff.) While this argument

may seem a little far-fetched, Kuntzman, the non-moving party, must be believed at the

summary judgment stage. Her refutation combined with the alleged complaints and

---

[8] Kuntzman alleges that there were rumors at the Decatur Wal-Mart of an affair
between Zartman and Boots. (Kuntzman Aff. 1-2.) But as Wal-Mart East has pointed
out, this evidence constitutes inadmissible hearsay and it has not been considered by
the court. The court also notes that a few of the calls placed by Kuntzman's phone
occurred at times when Kuntzman was not at work (Def.'s Reply 8), but many others
were made during the workday. (*See* Def.'s Br. 10.) This is a matter for a jury to sort out.

Wal-Mart East also contends that Kuntzman's testimony that Zartman could
have used the phone is inadmissable because it is speculation (Def.'s Reply 6-7) and that
her affidavit testimony is contradicted by that in her deposition. (Def.'s Reply 8.) First,
Kuntzman alleges that she has personal knowledge of Zartman using her phone.
Second, Kuntzman alleged in her affidavit that she "often" saw Zartman use her phone
to send text messages. (Kuntzman Aff. 2.) In her deposition, when asked who could
have placed a call to Boots on December 9, 2006, Kuntzman answered that "Dawn used
it occasionally." (Kuntzman Dep. 224-25.) The two statements are not contradictory so
as to make them unreliable.

migraines are sufficient to create a genuine issue of fact as to whether Kuntzman found Boots's conduct to be offensive. This appears to be the type of "he said, she said" dispute for which summary judgment is "singularly inappropriate." *Russell v. Bd. of Trs. of Univ. of Ill. at Chi.*, 243 F.3d 336, 340 (7th Cir. 2001).

The fourth element of a sexual harassment claim is a basis for employer liability. When no tangible employment action has been taken against the claimant, the employer can assert the *Ellerth-Faragher* affirmative defense to the sexual harassment claims. *Mosher v. Dollar Tree Stores, Inc.*, 240 F.3d 662, 666-67 (7th Cir. 2001) (citing *Burlington Indus. v. Ellerth*, 524 U.S. 742, 760-65 (1998); *Faragher v. City of Boca Raton*, 524 U.S. 775, 807 (1998)). No tangible employment action has occurred, so the affirmative defense is available to Wal-Mart East. *Suders*, 542 U.S. at 140-41. The two elements of this defense are: "(1) that the employer exercised reasonable care to prevent and correct promptly any sexually harassing behavior, and (2) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Haugerud v. Amery Sch. Dist.*, 259 F.3d 678, 700 (7th Cir. 2001). An employer is not liable for sexual harassment committed by an employee's coworker if the employer "promptly investigates a complaint when made and then, if warranted, takes steps reasonably likely to stop the harassment." *Lucero*, 566 F.3d at 731 (internal citation and quotation omitted).

Wal-Mart East argues only that Kuntzman did not take advantage of its reporting procedures, not that it acted promptly to correct the offending behavior.

(*See* Def.'s Br. 18-19.) Kuntzman presents sufficient evidence to show that she did take advantage of Wal-Mart's reporting procedures. Non-salaried employees such as she were required to immediately report harassment in "one of two ways": either by reporting the "violation to any Salaried Member of Management" or calling the toll-free "Wal-Mart Ethics Helpline." (Wal-Mart Discr. & Harassment Prev. Policy 2.) Kuntzman repeatedly chose the former course and this is sufficient to allow a jury to find that she availed herself of the company's reporting policy. When an employer fails to take any type of corrective action in response to employee's complaints, as appears to be the case here, courts have found that a jury could find a basis for employer responsibility. *See Haugerud*, 259 F.3d at 700. Thus, the court finds that Kuntzman raises a question of material fact as to each of the disputed essential elements of her sexual harassment claim, and Wal-Mart East's motion for summary judgment as to this claim is denied.

     D.    *Retaliation*

         1.    Timeliness

First, the court must resolve the parties' argument over whether Kuntzman's retaliation claim is time-barred. Wal-Mart East believes that the only incidents of retaliation that Kuntzman may rely on are Rodifer's two suggestions that he and Kuntzman should date after she stopped working at Wal-Mart. According to Wal-Mart East as these incidents happened sometime in January or early February 2006, there would have had to have been some additional incident of retaliation after February 16, 2006, for Kuntzman's EEOC charge of retaliation to be timely. In order to

raise a timely retaliation claim under Title VII, Kuntzman needed to submit her retaliation claim to the EEOC within 300 days of the offending conduct. *See Racicot v. Wal-Mart Stores, Inc.*, 414 F.3d 675, 677 (7th Cir. 2005). As Kuntzman filed her EEOC charge on December 13, 2006, generally, the court cannot consider incidents that occurred more than 300 days before this date, that is, before February 16, 2006.

In her response, Kuntzman argues that Wal-Mart East waged an ongoing campaign of harassment against her that included its filing criminal charges against her, its failure to stop the harassment by Boots, Rodifer's comments, and culminated in her "constructive discharge" in August 2006. As she filed her EEOC complaint only a few short days after the criminal complaint was filed against her, she argues that the retaliation claim itself is timely, and she can use Rodifer's actions as "support for a timely claim." (*See* Pl.'s Resp. 12-13 (quoting *West v. Ortho-McNeil Pharmacy Corp.*, 405 F.3d 578, 581 (7th Cir. 2005)).)

In reply, Wal-Mart East argues that Kuntzman cannot use the criminal charges to support her retaliation claim for two reasons. First, Kuntzman testified at her deposition that only Rodifer retaliated against her, and, second, Wal-Mart East believes Kuntzman cannot raise this allegation at the summary judgment stage, after not mentioning it in her complaint. Thus, the question becomes whether there are acts of retaliation that occurred within the 300-day filing period that Kuntzman can use as the basis of her retaliation claim.

To begin, the court does not believe that Wal-Mart East's failure to respond to Kuntzman's complaints about harassment constitutes retaliation.[9] Kuntzman has provided no cases that support this proposition. (Pl.'s Resp. 18.) To establish retaliation, Kuntzman must show that Wal-Mart East took a "materially adverse" action, the type that "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination," against her. *Burlington N.*, 548 U.S. at 68 (internal quotation and citation omitted). In *Allen v. American Signature, Inc.*, the defendant alleged that it decided to discipline the plaintiff in response to unrelated conduct of hers that it discovered while investigating her complaint of sexual harassment. 272 Fed. Appx. 507, 511 (7th Cir. 2008). The employee also alleged that she was subjected to criticism from other employees for a firing that they perceived to be in response to her complaint. *Id.* The Seventh Circuit found that the reprimand and criticism that the employee received after her complaint were not "materially adverse." *Id.* Thus, if a reprimand and criticism arising from a complaint are not materially adverse, it follows that in most cases, complete failure to respond to a complaint would also not be materially adverse. *Cf. Sweeney*, 149 F.3d at 556 (subjecting an employee to dirty looks and/or the silent treatment after a complaint is insufficient to establish discriminatory retaliation). The court could imagine a failure to stop harassment becoming so extreme and odious that

---

[9] Wal-Mart's failure to stop Boots's harassment would be an adverse employment action if it amounted to Kuntzman's constructive discharge. *Fischer v. Avanade, Inc.*, 519 F.3d 393, 408-09 (7th Cir. 2008). However, as explained above, Kuntzman has not provided sufficient evidence to establish that she was constructively discharged.

it could be seen as retaliation— such as a manager failing to stop (and thus tacitly encouraging) harassment that happens right in front of him, after the employee has complained of that exact type of harassment. But Kuntzman has made no such allegations. Accordingly, while lack of corrective action will be considered as part of the sexual harassment claim, the court will not consider any failure to stop Boots's harassment as evidence of retaliation.

The criminal complaint is another matter. As Kuntzman has noted, these charges were filed against her several months after she resigned, were initiated by Wal-Mart complaining to the authorities, and were ultimately dismissed by the local prosecutor. Given Kuntzman's resignation and her repeated complaints about Boots harassment, it seems logical that, at least for statute of limitations purposes, the filing of the complaint could be viewed as an incident of retaliation. Wal-Mart East opposes this, focusing on three main arguments.

First, Wal-Mart East claims that Kuntzman said, during her sworn deposition testimony, that the only retaliation she suffered was the comments by Rodifer. (Def.'s Reply 3-4.) Wal-Mart East claims this answer should be binding on Kuntzman. (*Id.*) However, this argument is unpersuasive, as it calls for Kuntzman, a lay-witness, to make a legal conclusion. This argument appears to expect Kuntzman to know the legal definition of retaliation and to understand what acts would fit within it; but this is an unrealistic expectation. In fact, in Kuntzman's deposition, defense counsel asked her: "And what is your, in layman's terms, your idea or thought on what retaliation is?"

(Kuntzman Dep., Pl.'s App. to Resp. 48.) Kuntzman's response reveals that she didn't fully understand the legal definition of retaliation - "[s]omething to like be negatively held against you in any way." (*Id.*)

As a lay-witness, it is enough that Kuntzman testify to the acts that constitute the retaliation; she does not need to legally define them as such. *See Thomas v. Ragland,* 324 F.Supp.2d 950, 966 (W.D. Wis. 2004) ("[l]ay witnesses are not required, or even permitted to testify about questions of law"); *cf. Christianson v. Nat'l Sav. and Trust Co.,* 683 F.2d 520, 529 (D.C. Cir. 1982) ("lay legal conclusions are inadmissable into evidence."). Perhaps Kuntzman experienced other acts that, viewed through the eyes of experienced counsel, could be construed as retaliation; and it is the function of her legal counsel to advance them, as has been done here. *See Van Jelgerhuis v. Mercury Fin. Co.,* 940 F. Supp. 1344, 1360 (S.D. Ind. 1996) ("laypersons' assessments on a question of law are hardly dispositive of an issue affecting their claims, let alone binding on [the] court").

Second, Wal-Mart East argues that Kuntzman refused to answer questions about the criminal charges during her deposition, and thus should be barred from relying on the charges as evidence of retaliation. (Def.'s Reply 8-9.) This argument, unsupported by case law, is unpersuasive.[10] Kuntzman refused to answer questions about the

_____

[10] In any case, as explained below, Kuntzman has not provided sufficient evidence to establish a claim of retaliation based on Wal-Mart East pressing criminal charges against her.

criminal charges because the charges were still pending when she was deposed. (*See* Kuntzman Dep., Pl.'s App. to Resp. 1; State of Ind. Mot. to Dismiss.) In such circumstances, failing to answer questions about the charges makes complete sense. Further, the fact that Wal-Mart East sought to ask Kuntzman questions about the charge indicates that Wal-Mart East was aware of the charges. Combined with the fact that Wal-Mart East, allegedly, pressed the charges and provided the authorities with evidence, this certainly should have given Wal-Mart East some notice that, should the charges be dropped, Kuntzman might use this incident in her lawsuit.

Finally, Wal-Mart East argues that Kuntzman failed to mention the criminal charges as a basis for her retaliation claim in her complaint and thus should be barred from relying on it, for the first time, at the summary judgment stage. (Def.'s Reply 9-10.) This argument is problematic. Despite the recent heightening of federal pleading standards, *see Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009), federal courts still require only notice pleading, meaning plaintiffs do not need to provide lengthy recitations of the facts that support their claims. *See Bridges v. Gilbert*, 557 F.3d 541, 546 (7th Cir. 2009); *see also Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 (2002) ("a complaint in an employment discrimination lawsuit [need] not contain specific facts establishing a prima facie case of discrimination"). Further, this argument implies that a plaintiff could not rely on evidence he/she finds in discovery to support a previously pled claim without moving to amend the complaint.

The additional question, unaddressed by either side, is whether this court can even consider out-of-the-workplace conduct by an ex-employer as retaliation. The Supreme Court has made clear that retaliation can consist of actions outside the workplace, *see Burlington N. and Santa Fe Ry. Co. v. White*, 548 U.S. 53, 63-64 (2006) ("[a]n employer can effectively retaliate against *an employee* by taking actions not directly related to his employment or by causing him harm *outside* the workplace"),[11] and the filing of criminal charges fits that bill, *see, e.g., Rochon v. Gonzales,* 438 F.3d 1211, 1217-18 (D.C. 2006) (FBI's refusal to investigate death threats against employee and wife could constitute retaliation).

### 2. Merits of Kuntzman's Retaliation Claim

As discussed above, the court finds that Kuntzman has produced insufficient evidence to prove that she was constructively discharged and that the lack of remedial action by Wal-Mart East does not rise to the level of an adverse action for establishing retaliation. As the comments made to Kuntzman by Rodifer are outside the 300 day statute of

---

[11] The Seventh Circuit has said that post-employment acts of retaliation can be actionable under Title VII if they "have a nexus to employment" or if they "impinge[ ] on the [employee's] future employment prospects." *Veprinsky v. Fluor Daniel, Inc.*, 87 F.3d 881, 891 (7th Cir. 1996). This case appears to fit that description as the pending criminal charges were based on Kuntzman's alleged actions at her job and certainly could affect her future employment prospects. Even more, in cases similar to the one at hand, courts from other circuits have held that post-employment, out-of-the-workplace conduct can be retaliation. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996) (holding that "malicious prosecution can constitute adverse employment action" where employer pressed criminal charges against former employee,); *Beckham v. Grand Affair, Inc.*, 671 F.Supp. 415, 419 (W.D. N.C. 1987) (arrest and prosecution of ex-employee who filed an EEOC complaint could constitute Title VII retaliation).

limitations, the court will consider them only as "background evidence" in support of her timely retaliation claim about the criminal charges. *See Nat'l R.R. Passenger Corp. v. Morgan*, 536 U.S. 101, 113 (2002).

An employer may not retaliate against an employee who has complained about conduct violating Title VII. 42 U.S.C. § 2000e-3(a); *Luckie v. Ameritech Corp.*, 389 F.3d 708, 714 (7th Cir. 2004). Kuntzman relies on the direct method of proof for her retaliation claim.[12] (Pl.'s Resp. 15.) Under the direct method, a plaintiff establishes a retaliation claim by presenting "enough evidence to demonstrate that [the adverse employment action] was a result of intentional discrimination." *Kennedy v. Schoenberg, Fisher & Newman, Ltd.*, 140 F.3d 716, 722 (7th Cir. 1998). This breaks down into a three part requirement that Kuntzman show: "(1) she engaged in statutorily protected activity; (2) she suffered an adverse employment action taken by the employer; and (3) a causal connection between the two." *Moser v. Ind. Dep't of Corrs.*, 406 F.3d 895, 903 (7th Cir. 2005). Evidence of these elements may either be direct or circumstantial. *See Maldanado v. U.S. Bank*, 186 F.3d 759, 763 (7th Cir. 1999). Direct evidence "can be interpreted as an acknowledgment of discriminatory intent by the defendant," *Troupe v.*

---

[12] Kuntzman has not argued that she can prove retaliation under the indirect method of proof. However, the court notes that Kuntzman has not produced evidence to create an issue of material fact with this method. To establish a prima facie case under the indirect method, Kuntzman must show that "(1) she engaged in a statutorily protected activity; (2) she met the employer's legitimate expectations; (3) she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated employees who did not engage in statutorily protected activity." *Moser*, 406 F.3d at 903. Kuntzman has not produced any evidence as to the fourth factor.

*May Dep't Stores, Co.*, 20 F.3d 734, 736 (7th Cir. 1994), while circumstantial evidence can consist of "ambiguous statements or suspicious timing." *Maldanado*, 186 F.3d at 763 (citing *Troupe*, 20 F.3d at 736). A plaintiff may present a combination of direct and circumstantial evidence. *See id.*

Here, Kuntzman asserts that her multiple complaints to Zartman, Davis, and Rodifer constituted protected activity. The Seventh Circuit has recognized that internal reporting of sexual harassment is a statutorily protected activity under 42 U.S.C. § 2003e-3(a). *See Rizzo v. Sheahan*, 266 F. 3d 705, 715 (7th Cir. 2001) (finding that the plaintiff engaged in activity protected by statute when she filed an internal sexual harassment complaint against a co-worker); *see also E.E.O.C. v. V.J. Foods, Inc.*, 507 F.3d 575, 580 (7th Cir. 2007) (holding that an employee had opposed a practice of sexual harassment under 42 U.S.C. § 2003e-3(a) for purposes of a retaliation claim when her mother complained to company management).

Then, Kuntzman suffered an adverse employment action when Wal-Mart East filed criminal charges against her after she resigned. Wal-Mart East argues that Kuntzman cannot show that she suffered an adverse employment action as she was never disciplined or fired, and it never reduced her hours or pay. (Def.'s Br. 15.) But this argument ignores the fact that retaliation can consist of acts outside the workplace against former employees. *See Berry v. Stevinson Chevrolet*, 74 F.3d 980, 984, 986 (10th Cir. 1996) ("malicious prosecution [of a former employee] can constitute adverse employment action"). Kuntzman must show that the adverse action taken against her

was materially adverse, meaning that it "well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Burlington N.,* 548 U.S. at 68 (internal quotation omitted). Initiation of criminal charges is the type of adverse action that could deter an employee from making a charge of discrimination.

The third element of the prima facie case requires that Kuntzman show a causal connection between the protected activity, her complaints to Wal-Mart East's managers, and the adverse action, the criminal charges. *See Moser,* 406 F.3d at 903. Retaliatory intent need only be a "motivating factor" for the adverse action, the plaintiff does not have to show that "but-for" the discriminatory intent, the action would not have been taken. *Spiegla v. Hall,* 371 F.3d 928, 942-43 (7th Cir. 2004). Kuntzman admits that she lacks direct evidence of a casual connection between her complaints and the criminal charges, but claims she has presented "circumstantial evidence" of such a connection by showing suspicious timing and pretext for discrimination.[13] (Pl.'s Resp. 19-20.) *See Volovsek v. Wis. Dep't of Agric., Trade & Consumer Prot.*, 344 F.3d 680, 689-90 (7th Cir. 2003). Kuntzman argues that the timing between her complaints of harassment and Rodifer's comments to her and the filing of criminal charges was suspicious. (*Id.*)

_____

[13] While evidence of pretext can be used to establish a causal link for a prima facie case of retaliation; it can also be used to rebut a defendant's claim that the adverse action was taken for non-discriminatory reasons. *See Horwitz v. Bd. of Educ. of Avoca Sch. Dist. No. 37*, 260 F.3d 602, 614 (7th Cir. 2001); *see also Valentino v. Village of South Chicago Heights,* 575 F.3d 664, 673 (7th Cir. 2009) (finding that the same evidence of pretext can be used to be used to establish a prima facie case and to show that the defendant's stated reason for taking the adverse action was a "mere front").

Even though Wal-Mart East fails to respond to this point, the court disagrees. Rodifer's comments might be seen as suspiciously timed, because he made them shortly after Kuntzman complained to him of Boots's harassment. But these comments can only be used as background evidence, as they were not timely raised in an EEOC charge, and, in any event, they do not appear to rise to the level of an adverse employment action. Thus, Kuntzman is left arguing that the several month gap between her complaints about Boots (which began in October 2005), and the filing of criminal charges sometime in or after August 2006 is suspicious. This is too much of a stretch. A ten month delay between protected activity and an adverse employment action, except in exceptional circumstances, does not indicate "suspicious timing." *See Tomanovich v. City of Indianapolis*, 457 F.3d 656, 665 (7th Cir. 2006) (finding that a period of four months between filing of a lawsuit and alleged retaliation was not sufficient to establish a causal connection); *see also Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 919 (7th Cir. 2000) (a three month gap alone was not enough to establish a causal connection).

Even more, although neither side addresses this point, the Seventh Circuit has held "[t]he key inquiry in determining whether there is a causal connection under the direct method is whether [plaintiff's supervisor] was aware of the allegations of discrimination at the time of [his/her] decisions to" take adverse action against the plaintiff; "absent such knowledge, there can be no causal link between the two." *Luckie v. Ameritech Corp.*, 389 F.3d 708, 715 (7th Cir. 2004); *see also Nagle v. Village of Calumet Park,* 554 F.3d 1106, 1122 (7th Cir. 2009) (finding that plaintiff failed to show a causal

connection under the direct method when he did not show that the person who took the adverse action against him knew of his protected activity, even though there was less than a month's time between the two occurrences).

Kuntzman must show, by producing evidence that would support a reasonable inference, that the person taking the adverse action had "actual knowledge" of the complaints. *Luckie,* 389 F.3d at 715; *see also Rogers v. City of Chicago,* 320 F.3d 748, 754 (7th Cir. 2003) ("under the direct method a plaintiff must provide direct or circumstantial evidence that the *decisionmaker* [for the retaliatory action] has acted for the prohibited reason") (emphasis in original); *Lalvani v. Cook County, Ill.,* 269 F.3d 785, 790 (7th Cir. 2001) ("When an adverse employment action follows close on the heels of protected expression, and the plaintiff can show that the person who decided to impose the adverse action knew of the protected conduct, the causation element of the prima facie case is typically satisfied . . . . [H]owever, it works the other way, too.") (internal citation omitted).

Here, Kuntzman has not produced any evidence to show or to support an inference that the person who initiated the criminal investigation against her knew of her complaints. The evidence shows that Farmer had some involvement in the criminal investigation[14] (Greg Farmer Dep., App. to Pl.'s Resp., DE # 60-4 at 9), but in his affidavit he claims that he did not know about Kuntzman's complaint until after

---

[14] Farmer appears to have discussed the criminal investigation further in his deposition, but neither party has submitted those pages. (Greg Farmer Dep. 9.)

criminal prosecution began and the EEOC complaint was filed. (*Id.* at 2.) Although Kuntzman states that Davis told her that he would inform Farmer of her complaints, she also admits that she has no personal knowledge as to whether or not Farmer had actual knowledge of her complaints. (Kuntzman Dep., Pl.'s App. to Resp. 108, 214.) While Kuntzman need not present smoking-gun evidence, she has presented very little evidence about the criminal investigation at all and what she has produced is insufficient to support an inference that the person who initiated the adverse action knew of her protected activity.

In addition to suspicious timing, Kuntzman claims that because the criminal charges were eventually dropped, the filing of them was a pretext for discriminatory retaliation. This contention does fall in line with language from *Robinson v. Southeastern Pennsylvania Transportation Authority*, 982 F.2d 892, 896-97 (3d Cir. 1993) (employer's unfounded discipline of employee following protected activity was evidence of retaliation). However, in *Robinson*, the plaintiff appears to have presented evidence that satisfied the court that the disciplinary charges against him were false (for example, a letter in the record reported that he had not been violent recently, when the evidence showed that he had not ever been violent at the workplace). *Id.* To show pretext, a plaintiff needs to present some evidence that the purported basis for the adverse action was a dishonest explanation or a lie. *Lucas v. Chi. Transit Auth.*, 367 F.3d 714, 731 (7th Cir. 2004); *Wade v. Lerner N.Y., Inc.*, 243 F.3d 319, 323 (7th Cir. 2001) (stating that pretext "addresses whether the employer honestly believes the reason it offers")

(internal quotations omitted). Here, although Kuntzman shows that the criminal charges made against her were dropped by the prosecution, she does not present any evidence that they were not made in good faith or that Wal-Mart East did not have any legitimate reason to believe that she may have stolen money. Thus, Kuntzman's retaliation claim cannot survive summary judgment and Wal-Mart East's motion is granted as to this claim.

      D.    *Sex Discrimination*

Kuntzman has decided not to pursue her gender discrimination claim. (Pl.'s Resp. 59.) Therefore, summary judgment is granted as to the gender discrimination claim.

## IV.    CONCLUSION

For the foregoing reasons, Wal-Mart East's motion for summary judgment (Def.'s Mot. for Summ. J., DE # 53) is **GRANTED** in part (as to the claims of constructive discharge, retaliation, and gender discrimination, and **DENIED** in part (as to the claim of sexual harassment). Wal-Mart East's motion to strike (Def.'s Mot. to Strike, DE # 66) is **DENIED**.

**SO ORDERED.**

Date: November 20, 2009


      s/James T. Moody      
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT